**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BARRY EHLERS, | ) | |
| | ) | |
| Petitioner, | ) | No. 16 C 5092 |
| | ) | |
| v. | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| AMANDA GALLEGOS, | ) | |
| | ) | |
| Respondent. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

On July 28, 2015, a Circuit Court of Cook County judge found Petitioner Barry Ehlers in contempt of court for failing to pay some $43,000 in child and spousal support owed as a result of his November 2014 divorce. On a court finding that he willfully failed to comply with the order, Ehlers was taken into custody on November 17, 2015. Ehler has exhausted state-court challenges to his confinement and now seeks a writ of *habeas corpus* from this court pursuant to 28 U.S.C. § 2254.[1] Ehlers seeks relief on several grounds,[2] including (1) that procedures used by the trial court during the contempt hearing, including failing to appoint counsel and failing to state explicit findings regarding Petitioner's ability to pay, violated his due process rights, (2) that the bench trial violated his Seventh Amendment right to a trial by jury, and (3) that his incarceration

---

[1] Petitioner's appeal of the contempt finding was consolidated into his appeal of the divorce judgment. The contempt finding and divorce judgment were affirmed by the Appellate Court of Illinois in September 2017, and the Illinois Supreme Court denied Ehlers's petition for leave to appeal on March 21, 2018. *See Ehlers v. Ehlers*, 2017 IL 150293-U, 2017 WL 4399843 (Ill. App. Ct. 1st Dist. Sept. 29, 2017); *In re Marriage of Ehlers*, 95 N.E.3d 482 (Ill. 2018). Respondent does not challenge Petitioner's exhaustion of state court remedies.

[2] Most of Mr. Ehlers's alleged grounds for relief either contest the Circuit Court of Cook County's November 20, 2014 divorce judgment (rather than the July 28, 2015 contempt finding or the November 17, 2015 order of incarceration), or raise claims arising under state law that are not redressable by this court on *habeas* review. *See Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 701–02 (1992) (explaining that federal courts lack jurisdiction to review state court decisions "'involving the granting of divorce, decrees of alimony,' and child custody orders")). As a result, the court dismissed these claims in its order of June 8, 2016 [10].

pursuant to a finding of civil contempt, rather than a conviction for a crime, violates the Thirteenth Amendment's prohibition of involuntary servitude and slavery. Respondent Amanda Gallegos[3] has moved to dismiss Ehlers's petition pursuant to Federal Rule of Civil Procedure 12(b)(1) as moot, or alternatively, for lack of jurisdiction under *Younger v. Harris*. Because Respondent made the *Younger* abstention argument for the first time in her reply brief, the motion to dismiss is stayed pending Petitioner's response to that argument. The court also notes, however, its concerns about the merits of any of Petitioner's claims and directs that he respond to those concerns and to Respondent's the *Younger* argument within 21 days.

## BACKGROUND

This petition for a writ of *habeas corpus* arises out of Petitioner Ehlers's November 2014 divorce. The Circuit Court of Cook County divided marital property between Petitioner and his former wife, Tammy Wallace, and ordered Petitioner to pay spousal maintenance and child support. (Pet. for Writ of Habeas Corpus ("Habeas Pet.") [1] at 2.) Petitioner has not paid all of his support obligations and, as a result, has twice been held in contempt of court on his ex-wife's motion. (Pet'r's Resp. to Mot. to Dismiss ("Pet'r's Resp.") [61] ¶ 3.) The first time was on February 9, 2012 (presumably arising out of a violation of a pre-decree order), but that first contempt finding was dismissed after Petitioner paid $11,698 toward his support obligations. (*Id.*)

On July 28, 2015, Petitioner was again found in contempt of court for failing to pay $43,600 in outstanding support. (*Id.*) The Circuit Court of Cook County held a four-day hearing on the contempt finding.[4] *See Ehlers v. Ehlers*, 2017 IL 150293-U, 2017 WL 4399843, at *3 (Ill. App. Ct. 1st Dist. Sept. 29, 2017). Ehlers contended at this hearing that he was unable to pay support

---

[3] During the pendency of this case, Amanda Gallegos replaced Nneka Jones Tapia as the Executive Director of the Cook County Jail, where Ehlers was held during 2015 and 2016. Gallegos has been substituted as the proper respondent. *See* Fed. R. Civ. P. 25(d).

[4] Neither party provided the court with a transcript of the Circuit Court of Cook County's oral ruling holding Petitioner in contempt or a transcript of the hearing itself. To the extent possible, this court gleans the Circuit Court's reasoning from the opinion of the Illinois Appellate court affirming the contempt finding. *See Ehlers*, 2017 WL 4399843.

obligations because he had lost his job. *Id.* at *14–15. In its oral ruling, however, the court "made express findings that [Ehlers] had the resources to pay"; for example, it recounted that Petitioner had deposited $99,377.84 into his checking account between July 15, 2014 and March 20, 2015. *Id.* The court also considered evidence "that [Ehlers] had purposely chosen to pay other obligations instead." *Id.* at *3. The state trial judge gave Petitioner two weeks to meet his obligations, and when he did not, ordered Petitioner's incarceration starting on November 17, 2015. (*Id.* at *15; Pet'r's Resp. ¶ 3.) Petitioner was held in Cook County jail for seven months— from November 17, 2015 to June 22, 2016. (Pet'r's Resp. ¶ 10.) He then remained under electronic home monitoring until April 28, 2017, when his family paid the amount required to purge Ehlers of the contempt order. (*Id.* at ¶ 3.)

As of July 2, 2018, Petitioner still had outstanding obligations pursuant to the November 2014 divorce judgment. The Circuit Court of Cook County issued an attachment order directing the Cook County Sheriff to bring Petitioner before the court to answer his ex-wife's petition to show cause. (*Id.* at ¶ 3; Attach. Order, Ex. 2 to Pet'r's Resp. [53].) That order stated that Petitioner still owed $10,881 for his children's health insurance premiums; $67,000 in unpaid child support, spousal maintenance, and college contributions; $50,000 in attorney's fees incurred by his former wife; and a $535,400 debt arising from a home equity line of credit assigned to him in the divorce judgment. (Attach. Order.) Petitioner has not appeared in the Circuit Court of Cook County to respond to this petition to show cause,[5] and alleges that, to his knowledge, the attachment order is still outstanding. (Pet'r's Resp. ¶ 3.) To this date, Petitioner has unpaid spousal maintenance and child support obligations, but alleges that he does not have the means

---

[5]     Specifically, Petitioner states that he will not appear in the Circuit Court of Cook County: "Upon advice of legal counsel, Plaintiff does not attend any proceedings in Illinois court's: [sic] as he risks indefinite imprisonment; lacks an opportunity for justice; and Petitioner, and any attorney representing him, must have leave of court to file anything in Judge Reynolds' court." (Pet'r's Resp. ¶ 18.)

to pay as he has "no net income and no assets" and has filed for personal bankruptcy.[6] (*Id.* at ¶ 11, 19; *In re Ehlers*, No. 3:18-bk-32997-SHB (E.D. Tenn. filed Sept. 28, 2018)).

On May 9, 2015, Petitioner filed a petition for a writ of *habeas corpus* in this court. Petitioner seeks relief on several grounds. First, he alleges that his due process rights were violated in several ways during the contempt proceedings including by the Circuit Court of Cook County's failure to state its findings regarding Petitioner's ability to pay the support obligations in the contempt order or order of incarceration,[7] the court's failure to appoint an attorney during the contempt proceedings, the lack of notice that ability to pay was a critical issue in the contempt proceedings, the court's failure to use a standardized form to elicit relevant financial information from him, and the lack of access to a social worker. (Habeas Pet. at 28, 30, 37, 39–40.) Second, Petitioner alleges that the court violated his Seventh Amendment right to a trial by jury by conducting a bench trial.[8] (*Id.* at 100.) Third, Petitioner alleges that his incarceration pursuant to a finding of civil contempt, rather than conviction for a crime, violates the Thirteenth Amendment's prohibition of involuntary servitude and slavery. (*Id.* at 108.) On September 7, 2016, this court stayed further proceedings on the *habeas* petition pending Petitioner's exhaustion of state court remedies. *See Ehlers v. Reynolds*, No. 16-CV-05092 (N.D. Ill. June 8, 2016) [10]. Petitioner notified the court that he had exhausted his direct appeals on July 2, 2018. (Notice of Exhaustion [36] at 1.)

---

[6] Ehlers's response to the motion to dismiss makes no mention of it, but the court has a copy of a June 2019 order dismissing his bankruptcy proceedings. As discussed below, the parties are invited to address whether rulings in the bankruptcy court alter the mootness analysis.

[7] Petitioner modifies this claim at points in his petition by stating that if the court did make an express finding of his ability to pay the arrearage, it "did not provide Barry with a copy of the finding," (Habeas Pet. at 31), and that his assertion that the court failed to make findings about his ability to pay was "on information and belief," (*id.* at 37), despite the fact that Petitioner was present at the hearing.

[8] Petitioner does not say whether the alleged Seventh Amendment violation occurred during the divorce trial or the contempt hearing, but the court includes it here for completeness.

Respondent moved to dismiss the petition on September 5, 2019 for lack of subject-matter jurisdiction.  (Mot. to Dismiss [58] at 1; FED. R. CIV. P. 12(b)(1).)  Respondent alleges that Ehlers's petition is moot because he is no longer in custody.  (*Id.* at 2–3.)  Then in a reply memorandum, Respondent argued, in the alternative, that the court should decline to exercise jurisdiction over the petition under the abstention principles of *Younger v. Harris*, 401 U.S. 37 (1971).  (Resp't Reply to Pet'r's Resp. ("Resp't Reply") [62] at 3.)  Petitioner responds that his petition is not moot because it falls under the exception to mootness for cases that are capable of repetition, yet evading review.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the complaint's subject matter.  In considering a motion to dismiss, the "court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the [petitioner]."  *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).  The "party asserting federal jurisdiction when it is challenged has the burden of establishing it" because of the presumption that "federal courts lack jurisdiction unless the contrary appears affirmatively from the record."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)).  If the motion to dismiss denies the truth of the allegations asserting jurisdiction, "the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *St. John's*, 502 F.3d at 625 (quoting *Long*, 182 F.3d at 554).

## DISCUSSION

Since the Supreme Court's decision in *Lane v. Williams*, 455 U.S. 624 (1982), courts have stressed the importance of focusing on the relief sought by a *habeas* petitioner when determining questions of jurisdiction.  *See D.S.A. v. Circuit Court Branch 1*, 942 F.2d 1143, 1147 (7th Cir.

1991) (citing *Port v. Heard*, 764 F.2d 423, 428 (5th Cir. 1985)). In *Lane*, for example, the Court denied a petition for a writ of *habeas corpus* as moot because the petitioners challenged only their sentences, rather than the underlying convictions. 455 U.S. at 631. Because the sentences had been fully served and could not be undone, there was no available remedy.

Petitioner Ehlers requests three forms of relief: (1) release from custody, (2) "[d]amages for false imprisonment and any other damages Petitioner may be entitled to under law," and (3) "such relief as is just." (Habeas Pet. at 14.) In 2017, Petitioner paid the amount required to purge the state court's finding of contempt and is no longer in custody. Because his fully-served sentence cannot be undone, nor can the court vacate an already-dismissed contempt judgment, Petitioner's first request for relief is moot. Moreover, a district court may not award money damages even if it grants a petition for a writ of *habeas corpus*. *See Nelson v. Campbell*, 541 U.S. 637, 646 (2004) (noting that "damages are not an available habeas remedy"). Thus, Petitioner's second requested form of relief is not available, and in fact, that request was dismissed by this court in an earlier order. *See Ehlers*, No. 16-CV-05092 [10], at *2.

Finally, a district court has some flexibility in fashioning *habeas* relief, but this flexibility is not unlimited. Petitioner requests "such other relief as is just," but in light of Petitioner's release from custody, the only relief the court could award would presumably relate to the procedures used in threatened or pending contempt proceedings to enforce Petitioner's underlying divorce judgment. The court has no jurisdiction to award relief to the extent that Petitioner seeks to challenge the Circuit Court of Cook County's divorce judgment, including the support obligation and allocation of marital property. (Pet'r's Resp. ¶ 25.) Federal courts have no jurisdiction to alter state court decisions granting a divorce, allocating marital property, or granting child or spousal support. *See Kowalski*, 893 F.3d at 995; *Ankenbrandt*, 504 U.S. at 693–704 (explaining the domestic relations exception to federal jurisdiction). Additionally, "a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *United States v. Rylander*, 460 U.S. 752,

756 (1983) (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)). Accordingly, a collateral challenge to the contempt hearing is not an appropriate avenue to dispute the state court's findings underpinning the divorce judgment. *See Maggio*, 333 U.S. at 69 ("[T]he [original] order is subject only to direct attack, and [ ] its alleged infirmities cannot be relitigated or corrected in a subsequent contempt proceeding.")

In light of the above, whether this court has subject-matter jurisdiction depends on three separate inquiries: first, whether Petitioner meets the custody requirement of 28 U.S.C. § 2254; second, whether the petition is moot now that Petitioner has been released from custody; and third, whether the court should nonetheless abstain from exercising jurisdiction over the petition.

## I. Custody

To obtain federal *habeas* relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must establish that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Satisfaction of the custody requirement is determined at the point when the petition is first filed. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). Incarceration pursuant to a state court judgment of civil contempt qualifies as custody for purposes of § 2254(a). *Puchner v. Kruziki*, 111 F.3d 541, 543 (7th Cir. 1997); *see also Duncan v. Walker*, 533 U.S. 167, 176 (2001) ("federal habeas corpus review may be available to challenge the legality of . . . a state court order of civil contempt"). Petitioner filed his petition for a writ of *habeas corpus* on May 9, 2016 while he was still incarcerated in the Cook County Jail and almost a year before his electronic home monitoring ended. Because Petitioner was incarcerated at the time he filed this petition, he has satisfied the statutory custody requirement despite his subsequent release.

## II. Mootness

Petitioner's release from custody does not necessarily moot his petition, but to avoid dismissal, his petition must present a "case or controversy" under Article III, § 2 of the Constitution. "To invoke federal jurisdiction, a [petitioner] must show a 'personal stake' in the outcome of the

7

action." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (quoting *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)). That is, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)); *see also Allen v. Duckworth*, 6 F.3d 458, 460 (7th Cir. 1993) ("This action for habeas corpus is moot if winning it would give the petitioner nothing.").

There are two exceptions to mootness that may apply to a *habeas* petition brought by someone who has been released from custody. The first is when a petitioner suffers "collateral consequences" as a result of the incarceration or conviction that give rise to a "concrete and continuing injury." *Spencer*, 523 U.S. at 7; *Puchner*, 111 F.3d at 543. The second exception applies when the challenged action is "capable of repetition, yet evading review." *Spencer*, 523 U.S. at 17; *Eichwedel v. Curry*, 700 F.3d 275 (7th Cir. 2012). The court addresses the availability of those two exceptions below.

### A. Collateral Consequences

Once a *habeas* petitioner has been released from custody, "some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Spencer*, 523 U.S. at 7. In *Carafas v. LaVallee*, the Supreme Court listed examples of consequences burdensome enough to give a petitioner who has been released from custody an ongoing stake in the controversy: an inability to vote in a state election, to serve as a juror, or to engage in certain businesses. 391 U.S. at 237; *see also D.S.A.*, 942 F.2d at 1146. There is a presumption that criminal convictions have collateral consequences. *Eichwedel*, 700 F.3d at 279 (citing *Spencer*, 523 U.S. at 9–10; *Sibron v. New York*, 392 U.S. 40, 54–57 (1968)). This presumption does not extend to other contexts, however, such as prison disciplinary proceedings, *Cochran v. Buss*, 381 F.3d 637, 640–41 (7th Cir. 2004), or to the revocation of parole, *Spencer*, 523 U.S. at 14. When the presumption of collateral consequences does not apply, the *habeas* petitioner must demonstrate the existence

of such consequences to meet Article III's injury-in-fact requirement. *Id.* at 14; *Eichwedel*, 700 F.3d at 279.

This court is not aware of any case extending the presumption of collateral consequences to judgments of civil contempt. In *Puchner v. Kruziki*, the Seventh Circuit reviewed the *habeas* petition of a father held in civil contempt for failing to "honor a child support agreement with his ex-wife." 111 F.3d at 542. In vacating the district court's partial grant of relief, the court expressed doubts that "a judgment finding someone in civil contempt qualifies as a 'conviction' [at all] for purposes of the collateral consequences rule." *Id.* at 543.[9] In any case, the court explained that "[a] judgment of civil contempt does not threaten any of [the] interests" raised by the Supreme Court in *Carafas* and found that no collateral consequences flowed from the judgment of civil contempt under review. *Id.*

Petitioner has not alleged that he is experiencing any "serious collateral consequences in the sense of civil disabilities" as a result of being held in contempt by the Circuit Court of Cook County or due to his subsequent incarceration. *Id.* at 544. Petitioner does suggest that he has suffered "reputational damage as a result of th[e] incarceration." (Habeas Pet. at 47.) Although Petitioner did not refer to the collateral-consequences exception in his petition or response brief, the court will presume that he believes this harm is a collateral consequence of the contempt judgment. The Seventh Circuit has observed, however, that "an impugned reputation is not a sufficient collateral consequence to save a habeas petition from mootness." *D.S.A.*, 942 F.2d at 1146 n.4 (citing *Wickstrom v. Schardt*, 798 F.2d 268, 270 (7th Cir. 1986)). The court concludes that collateral consequences do not save Ehlers's petition for a writ of *habeas corpus* from a finding of mootness.

---

[9]     The *Puchner* court explained that, "[u]nlike even a misdemeanor conviction, which represents an adjudication of some wrongdoing, civil contempt is a tool used by courts to compel compliance with their orders. The contemnor 'holds the keys to the jailhouse' in his own hands, and compliance produces an immediate release." *Puchner*, 111 F.3d at 543.

## B.    Capable of Repetition, Yet Evading Review

Another possible exception to mootness involves harms that are capable of repetition, yet evading review.  *Eichwedel*, 700 F.3d at 278; *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975).  This exception applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  *Turner v. Rogers*, 564 U.S. 431, 439–40 (2011) (quoting *Weinstein*, 423 U.S. at 149).  Petitioner contends that *Turner v. Rogers* requires this court to find that his case is not moot.  (Pet'r's Resp. ¶ 20.)  In *Turner*, the appellant was found in civil contempt for failure to pay child support and had completed a 12-month sentence, but the Court held that his challenge to the state court's civil contempt procedures was not moot.  On the merits of that challenge, the Court concluded that the state was not required to provide counsel to one charged with civil contempt, so long as other procedural safeguards are afforded, including notice to the charged party that his ability to pay would be addressed, and specific findings about that issue.  Respondent here distinguishes *Turner*, noting that, unlike the appellant in *Turner* who had a history of spotty employment and dealing drugs, Petitioner has provided no evidence of an inability to work.  (Resp't Reply at 2.) Accordingly, Respondent seems to suggest that Petitioner Ehlers is less likely than the appellant in *Turner* to again face contempt hearings.  (*See id.*)

### 1.    Duration

To satisfy the evading-review prong, the challenged injury must be of a type that "is always so short as to evade review."  *Eichwedel*, 700 F.3d at 280 (quoting *Spencer*, 523 U.S. at 18). "Cases that evade review are cases in which the alleged injury goes away on its own before litigation can be completed."  *Lucien v. Johnson*, No. 93-CV-400, 1994 WL 30956, at *3 (N.D. Ill. Feb. 1, 1994).  For example, the *Turner* court found imprisonment for "up to 12 months" for civil contempt too short to be fully litigated.  564 U.S. at 440.  Other decisions have found even longer durations of challenged injuries too short to be fully reviewed.  *See, e.g., Southern Pac. Terminal*

*Co. v. Interstate Commerce Comm'n*, 219 U.S. 498 (1911) (finding an order lasting two years short enough to fall within this exception); *United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012) (applying the exception when the prisoner was sentenced to 18 months in prison).

Civil contemnors generally remain in jail for brief periods of time. *See Leonard v. Hammond*, 804 F.2d 838, 843 (4th Cir. 1986). A civil contemnor may quickly secure his own release by either complying with the court order or "adduc[ing] evidence as to his present inability to comply." *Rylander*, 460 U.S. at 761. But, if the contemnor fails to comply with the court order, "incarceration for civil contempt may continue indefinitely." *United States ex rel. Thom v. Jenkins*, 760 F.2d 736, 740 (7th Cir. 1985). Respondent does not contest that the duration of Petitioner's incarceration was "so short as to evade review." *Eichwedel*, 700 F.3d at 280. While Petitioner was not given a fixed sentence of incarceration,[10] nor was there any maximum duration limiting Petitioner's incarceration like the twelve-month limit in *Turner*,[11] 564 U.S. at 436, Petitioner was actually in jail for seven months and then on electronic home monitoring for an additional ten months—a period too short to permit litigation prior to release. *See Leonard*, 804 F.2d at 843 (finding that a petitioner incarcerated indefinitely for civil contempt for failure to make child support payments met the capable-of-repetition exception because "civil contemnors generally remain in jail for brief time periods"); *cf. Walker v. McLain*, 768 F.2d 1181, 1182 (10th Cir. 1985) (finding

---

[10]    Neither party provided the court with a copy of the order of incarceration, but neither has alleged that Petitioner was sentenced for a set duration. Petitioner states that he was imprisoned indefinitely, and the Illinois Appellate Court decision affirming the finding of contempt does not mention a definite sentence. *Ehlers*, 2017 WL 4399843, at *14.

[11]    Petitioner notes that the Illinois child support statute limits sentences of imprisonment for contempt to six months. 750 ILCS 5/505(b). Illinois courts have not interpreted this provision to prohibit courts from sentencing civil contemnors to an indefinite period in jail. *See In re Marriage of Kuceba*, 2019 IL 170622-U, 2019 WL 1085264, at *9 (Ill. App. Ct. 2d Dist. Mar. 6, 2019) (citing *In re Marriage of Betts*, 200 Ill. App. 3d 26, 57, 558 N.E.2d 404, 424 (4th Dist. 1990)). Rather, Illinois courts have explained that "a jail sentence for indirect civil contempt will never exceed six months 'unless the respondent, through his continued recalcitrance, makes it exceed six months.'" *Id.*

that the *habeas* petition of a father incarcerated for civil contempt for failure to pay his support obligations was not moot when the maximum duration of incarceration was 90 days).

### 2.    Repetition

The second prong of the "capable of repetition, yet evading review" exception to mootness requires a showing of "a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Turner*, 564 U.S. at 440. Whether there is a "reasonable expectation" of repetition is not "an ingenious academic exercise in the conceivable." *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975). Rather, a court must make a "practical judgment as to whether the circumstances alleged in the complaint have 'evaporated or disappeared' or 'by [their] continuing and brooding presence,' continue to cast 'a substantial adverse effect' on the plaintiff." *Loertscher v. Anderson*, 893 F.3d 386, 395 (7th Cir. 2018) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974)).

In finding that the case of a father who had been imprisoned for failing to meet his child support obligations was not moot, the *Turner* Court explained that there was "a more than 'reasonable likelihood' that [he] would again be 'subjected to the same action.'" 564 U.S. at 440. In *Turner,* where an indigent father claimed he had been denied due process when the state did not provide him with counsel at a contempt hearing, the Court noted that the state court also did not make any express findings about the father's ability to pay the support obligations prior to holding him in contempt. *Id.* at 435, 437. Turner "frequently failed to make his child support payments," "[had] been the subject of several civil contempt proceedings," and was "imprisoned on several of those occasions." *Turner*, 564 U.S. at 440. Moreover, even while Turner's imprisonment was under review by the Supreme Court, he was again held in contempt and imprisoned, was still thousands of dollars in arrears, and faced yet another upcoming contempt hearing. *Id.*

Petitioner's situation is like that of Turner in certain respects; he has been held in contempt twice and imprisoned once. Additionally, he alleges that there is an outstanding attachment order

directing him to appear in the Circuit Court of Cook County to show cause for failing to comply with the divorce judgment, and he remains thousands of dollars in arrears. (Pet'r's Resp. ¶¶ 20–21.) Unlike the state court in *Turner*, however, the Circuit Court of Cook County did evaluate Petitioner's ability to pay. *See Ehlers*, 2017 WL 4399843, at *14–16 (summarizing the court's grounds for determining that Petitioner's failure to pay was willful). Respondent attempts to distinguish *Turner* on this ground and notes, further that Petitioner, an attorney, has not shown an inability to work. (Resp't Reply at 2.) But Petitioner challenges the repetition of the hearing itself, not solely the order of incarceration, and Petitioner's ability to work is not necessarily determinative of his ability to pay. Petitioner alleges that he currently has no income or assets with which to satisfy the arrearage or his support obligations.

Petitioner has shown that there is a reasonable likelihood he will again face contempt hearings utilizing the procedures he challenges on constitutional grounds in his *habeas* petition.[12] The likelihood that Petitioner will be the subject of *regular* future contempt hearings is more speculative than in *Turner* because the contempt findings in Petitioner's case have been on his ex-wife's motion rather than the result of a routine court procedure. *Cf. Turner*, 564 U.S. at 435–36. Even so, as long as the Circuit Court of Cook County continues to enforce its divorce judgment, there is a reasonable likelihood that Petitioner will once again be the subject of a civil contempt proceeding due to his claimed indigence, continuing nonpayment of the arrearage, and the outstanding attachment order seeking to compel Petitioner's appearance in the Circuit Court of Cook County.[13] *See Sanchez-Gomez*, 138 S. Ct. at 1541; *see also Parker v. Turner*, 626 F.2d

---

[12]    Specifically, as noted above, Petitioner alleges that his due process rights were violated during the contempt hearing that resulted in his incarceration because the state court did not (1) state its findings regarding Petitioner's ability to pay the support obligations in the contempt order and order of incarceration, (2) appoint an attorney during the contempt proceedings, (3) provide notice that ability to pay was a critical issue in the contempt proceedings, (4) use a printed form to elicit relevant financial information from him, or (5) provide him with access to a social worker. (Habeas Pet. at 28, 30, 37, 39–40.)

[13]    Petitioner states that "[u]pon advice of legal counsel, [he] does not attend any proceedings in Illinois court's [sic]." (Pet'r's Resp. ¶ 18.) It appears, however, that the attachment

1, 5 n.11 (6th Cir. 1980) (finding that plaintiffs who claimed that they could not "afford to make support payments and thus [were] likely to face future contempt proceedings" had standing); *Walker*, 768 F.2d at 1182–83 (finding a "clear risk" that a father claiming to be unable to meet his support obligation due to indigency would be the subject of future contempt proceedings). *But see Mann v. Hendrian*, 871 F.2d 51, 53–54 (7th Cir. 1989) (declining to find that a plaintiff had standing because he challenged the conduct of a specific judge and it was speculative that a future contempt hearing would be before the same judge).

Because there appears to be a reasonable likelihood that Petitioner will once again face a hearing for contempt, this petition for a writ of *habeas corpus* is not moot. *See Turner*, 564 U.S. at 440. As noted earlier, this court received notice from the Bankruptcy Court for the Eastern District of Tennessee of a June 2019 order closing Petitioner's bankruptcy case. Ehlers makes no mention of the status of his bankruptcy, and the court will expect the parties to address the question of whether the resolution of Petitioner's bankruptcy proceedings alters the mootness analysis.

## III.  Abstention

In her reply to Petitioner's response to the motion to dismiss, Respondent contends in a summary fashion that, even if this petition is not moot, the court nonetheless should decline jurisdiction based on principles of abstention laid out in *Younger v. Harris*. The court agrees that it may not exercise jurisdiction over this petition to the extent that Petitioner requests a remedy that would interfere with the state court's ongoing enforcement of his divorce judgment. And because Petitioner is no longer in custody, the only relief available to him through this *habeas* petition would affect future enforcement efforts, including the pending contempt proceedings. Respondent, however, raised this argument for the first time in her reply and Petitioner has not

---

order requiring Petitioner to appear in the Circuit Court of Cook County is still valid, and as long as it remains in effect, the court assumes there is a reasonable likelihood that Petitioner will eventually have to appear for a contempt hearing.

had an opportunity to address it. Accordingly, the court will allow Petitioner to reply to Respondent's argument that the court should abstain and dismiss his petition for a writ of *habeas corpus* under the principles of *Younger v. Harris*. *See Meinders v. UnitedHealthcare, Inc.*, 800 F.3d 853 (7th Cir. 2015) ("Due process . . . requires that a plaintiff be given an opportunity to respond to an argument or evidence raised as a basis to dismiss his or her claims.").

*Younger* abstention applies only to cases in which a litigant seeks injunctive or declaratory relief in an ongoing state judicial proceeding and so does not govern the typical application for a writ of *habeas corpus*. Courts nevertheless have occasionally relied on *Younger* abstention as a basis for dismissal of *habeas* petitions. *See, e.g., Sweeny v. Bartow*, 612 F.3d 571 (7th Cir. 2010); *see also Coleman v. Ahlin*, 542 F. App'x 549 (9th Cir. 2013); *Davis v. Lansing*, 851 F.2d 72 (2d Cir. 1988). Under *Younger v. Harris*, federal courts generally must not enjoin or interfere in ongoing state proceedings. Because federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them," *Younger* abstention applies only to three types of proceedings. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). These three types of proceedings are "ongoing state criminal prosecutions," "certain civil enforcement proceedings," and "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78. To determine whether abstention is appropriate, the court must further assess whether there are "ongoing state [ ] proceedings that are judicial in nature, involve important state interests, provide an adequate opportunity to raise federal claims, and do not contain special circumstances that would make abstention inappropriate." *Sykes v. Cook Cty. Circuit Court Prob. Div.*, 837 F.3d 736, 740 (7th Cir. 2016); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 437 (1982).

Abstention appears to be called for in this case. In *Juidice v. Vail*, the Supreme Court held that *Younger* required a federal district court to abstain in a proceeding challenging a state's civil contempt procedures. 430 U.S. 327, 335–36 (1977). Petitioner's *habeas* challenge to the

constitutionality of the procedures used during his state court contempt hearing similarly falls within the scope of *Younger* abstention. Additionally, state court enforcement of Petitioner's divorce judgment appears to be ongoing. To the court's knowledge, Petitioner is still required to make monthly payments to his ex-wife, and under 750 ILCS 5/510, a "judgment respecting maintenance or support may be modified" as to future installments. Petitioner mentions pending motions to modify his support obligations in his *habeas* petition and in his response to Respondent's motion to dismiss, albeit without describing the current status of these motions. (Pet'r's Resp. ¶ 3.) Additionally, Illinois courts may continually enforce divorce decrees after the entry of judgment, and Petitioner states that there is an outstanding attachment order directing him to appear in the Circuit Court of Cook County for future contempt proceedings. These factors suggest that the Illinois state courts remain a pending forum for Petitioner to bring his claims.

The ongoing contempt proceedings also involve an important state interest: Proceedings related to granting a divorce, child support, or spousal maintenance are areas of "significant state concern from which the federal judiciary should generally abstain under *Younger*." *Parejko v. Dunn Cty. Circuit Court*, 209 F. App'x 545, 546 (7th Cir. 2006). The Supreme Court's decision in *Juidice* itself rested "on the importance to the States of enforcing the orders and judgments of their courts." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987). The Supreme Court in *Pennzoil* further explained that federal intervention in contempt proceedings would "interfere with the execution of state judgments . . . on grounds that challenge the very process by which those judgments were obtained." *Id.* at 14. As long as there is a pending state proceeding, "proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Id.*

Those pending Illinois state proceedings would afford an adequate opportunity for Petitioner to raise constitutional challenges to the procedures in the contempt hearing itself. Indeed, the Appellate Court of Illinois identified several avenues for such a challenge: "He can appeal his contempt finding. ILL. SUP. CT. R. 304(b)(5). He can appeal the underlying orders

giving rise to his contempt finding and have them resolved by the normal appellate process. . . .

He can file a [state] petition for a writ of habeas corpus." *Ehlers*, 2017 WL 4399843, at *16 (citing

*In re Marriage of Ehlers*, No. 15-0293 (Ill. App. Ct. 1st Dist. Mar. 10, 2016)). Finally, there is no

indication in the record that exceptional circumstances make abstention inappropriate; for

example, that the contempt proceedings are "motivated by a desire to harass or are being

conducted in bad faith," or that abstention would cause Petitioner to "experience severe or

irreparable losses." *Parejko*, 209 F. App'x at 547.

In sum, the record suggests that abstention is appropriate in this case. Because Petitioner

has not had an opportunity to respond directly to this argument, however, the court will permit him

to submit a brief sur-reply addressing the issue. Before doing so, Ehlers is urged to consider

carefully the merits of his petition. The court notes that his constitutional arguments appear to be

on shaky ground, as described below.

## IV.     Merits

To obtain *habeas* relief under AEDPA, Petitioner must satisfy two statutory requirements.

First, he must establish that "he is in custody in violation of the Constitution or laws or treaties of

the United States." 28 U.S.C. § 2254(a). Second, Petitioner must demonstrate that the state

court's resolution of his claims on the merits was either (a) "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States"; or (b) "based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d). In evaluating

Petitioner's claims, this court "presume[s] to be correct" any factual determinations made by the

state court, unless Petitioner rebuts the presumption by "clear and convincing evidence." 28

U.S.C. § 2254(e)(1). A right is "clearly established" if set forth in the "holdings, as opposed to the

dicta, of [the] Court's decisions as of the time of the relevant state-court decision." *Williams v.*

*Taylor*, 529 U.S. 362, 412 (2000). To constitute an unreasonable application of that law, a state

court's ruling must have been "objectively unreasonable, not merely wrong; even clear error will

not suffice." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (quoting *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015)).

A state court's decision that dismisses a petitioner's claim without explanation may still be "on the merits." *See Harrington v. Richter*, 562 U.S. 86, 98 (2011). A district court on *habeas* review may "presume[ ] that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. If a state court summarily dismisses a petitioner's claims on the merits, the petitioner must show that "there was no reasonable basis for the state to deny relief" in order to obtain *habeas* relief. *Id.* at 98. If the state court's decision dismissing a petitioner's claims rests on procedural grounds, "the claim is barred in federal court" unless the petitioner can establish cause and prejudice for the procedural default. *Id.* at 103 (citing *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).

Petitioner contends that he was in custody in violation of the Constitution because of several alleged constitutional violations that occurred during the contempt hearing. The Illinois Appellate Court's review of Petitioner's claims on direct appeal is the last reasoned state court decision. As neither party has furnished this court with a transcript of the Circuit Court of Cook County's contempt hearing or copies of its contempt and incarceration orders, the court relies on the Appellate Court's opinion in addressing these claims.

## A.  Due Process Violations

Petitioner asserts that the Circuit Court of Cook County violated his due process rights in several ways during the contempt hearing. Petitioner alleges that, to comply with due process requirements, the trial court needed to: (1) state its findings regarding Petitioner's ability to pay the support obligations in the contempt order and order of incarceration, (2) appoint an attorney during the contempt proceedings, (3) provide notice that ability to pay was a critical issue in the contempt proceedings, (4) use a form to elicit relevant financial information from him, and (5) provide him with access to a social worker. (Habeas Pet. at 28, 30, 37, 39–40.) The Illinois

Appellate Court rejected these claims, concluding that the hearing complied with due process. *Ehlers*, 2017 WL 4399843, at *12, 16.

"Punishment may not be imposed in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." *Hicks v. Feiock*, 485 U.S. 624, 638 n.9 (1988) (citing *Rylander*, 460 U.S. at 757; *Shillitani v. United States*, 384 U.S. 364, 371 (1966)). But the Supreme Court has "made clear" that, "where civil contempt is at issue, the Fourteenth Amendment's Due Process Clause allows a state to provide fewer procedural protections than in a criminal case." *Turner*, 564 U.S. at 442. In *Turner v. Rogers*, the Supreme Court emphasized that it is important "to ensure accurate decisionmaking in respect to the key 'ability to pay' question." *Id.* at 445. Due process nevertheless "does not automatically require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration." *Id.* at 448. Rather, the Court explained that alternative procedural safeguards can "reduce the risk of an erroneous deprivation of liberty." *Id.* at 447. These safeguards include:

> (1) notice to the defendant that his "ability to pay" is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status; . . . and (4) an express finding by the court that the defendant has the ability to pay.

*Id.* at 447–48. None of these safeguards is specifically required so long as the procedures used by the state court are designed to ensure accurate decisionmaking.

Based on the record before the court, it does not appear that the state court's decision that the contempt hearing and order complied with due process violated any clearly established federal law. First, *Turner* does not require that a finding of ability to pay be relayed to a contemnor in written form rather than by oral ruling. Second, this court must presume that the state court's factual determinations are correct because Petitioner has thus far not rebutted the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Appellate Court of Illinois reviewed evidence presented at the contempt hearing of thousands of dollars received and paid

out by Petitioner to individuals other than his ex-wife. *Ehlers*, 2017 WL 4399843, at *15. The Appellate Court also noted that the trial court "issued a lengthy and detailed oral ruling" containing "extensive findings of fact" that Ehlers "had the funds to pay the court-ordered support, but chose not to do so." *Id.* The Appellate Court concluded that the trial court's findings were not "against the manifest weight of the evidence," nor did the trial court abuse its discretion. *Id.* at *16. Rather, Petitioner "offered no legally cognizable excuse" for his failure to pay. *Id.* In this court, Ehlers insists that he cannot pay the arrearage and asserts that the Illinois courts have effectively created an "ability to borrow" standard rather than assessing his ability to pay. (Pet'r's Resp. ¶ 6.) Additionally, Petitioner claims that borrowing money is counter to his religious beliefs (Habeas Pet. at 33–34), and that borrowing money while he is insolvent would violate his ethical obligations as an attorney. (Pet'r's Resp. ¶ 12.). The court is uncertain whether Petitioner raised these issues in any of the state court proceedings, but assuming they were properly preserved, his assertions alone do not establish that the state courts' findings of fact were clearly erroneous, nor that their conclusions of federal law were objectively unreasonable.

Individuals facing contempt do not have an automatic right to appointed counsel. Petitioner explains that he should have been provided counsel because his wife was represented by an attorney and his case was unusually complex. (Habeas Pet. at 30, 32, 40.) But Petitioner, himself an attorney, has not identified any factual or legal arguments that he was not competent to make on his own, and that required the court to appoint counsel experienced in contempt proceedings. (*See id.*) The right to counsel requires a fact-specific inquiry made on a case-by-case basis, but Petitioner thus far has not rebutted by clear and convincing evidence the trial court's conclusion that he was not entitled to appointed counsel. (*See id.*)

Additionally, Petitioner claims that the trial court did not provide notice that ability to pay was a critical issue in the contempt proceedings. While not addressing this argument explicitly, the Appellate Court's decision suggests that any alleged constitutional error here was not prejudicial to Petitioner. *See Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015). Petitioner's primary

argument during the contempt proceedings (as recounted by the Appellate Court) and on direct appeal was that he did not have the ability to pay the arrearage, and so should not have been held in contempt. *Ehlers*, 2017 WL 4399843, at *14. Such an argument demonstrates that Ehlers knew that his ability to pay was a factor in the contempt proceedings. Finally, there is no clearly established federal requirement that a trial court use a standardized form to elicit relevant financial information from a contemnor nor provide access to a social worker. The Supreme Court in *Turner* suggested forms as a possible way to ensure that state contempt proceedings comply with due process requirements but did not require them, nor has Petitioner identified information that he was unable to present to the state court in the absence of a standardized form.

### B.    Seventh Amendment

Petitioner alleges that the Circuit Court of Cook County violated his Seventh Amendment right to a jury trial by conducting a bench trial. (Habeas Pet. at 100.) The petition does not specify whether this alleged constitutional violation occurred during the divorce proceedings or during the four-day hearing at which the Circuit Court found him in contempt, but for the sake of completeness, the court will assume that the claim refers to the contempt hearing. The Appellate Court of Illinois did not specifically address this claim. If the dismissal was on procedural grounds, Petitioner has not shown that the default should be excused. *See Sykes*, 433 U.S. at 84. In any case, there is no constitutional right to a trial by jury in civil contempt proceedings. *See International Union, United Mine Workers of America v. Bagwell*, 114 S. Ct. 2552, 2557 (1994); *Shillitani*, 384 U.S. at 365. Petitioner has not shown that the state court had no reasonable basis to deny him relief. *Richter*, 562 U.S. at 98.

### C.    Thirteenth Amendment

Petitioner last alleges that his incarceration pursuant to a finding of civil contempt, rather than conviction for a crime, violates the Thirteenth Amendment's prohibition of involuntary servitude and slavery. (Habeas Pet. at 108.) The Illinois Appellate Court summarily concluded that Petitioner's incarceration did not violate any of his constitutional rights, *see Ehlers*, 2017 WL

4399843, at *16, and this court is aware of no case holding that incarceration as a sanction for civil contempt violates the Thirteenth Amendment. Moreover, the Supreme Court has upheld the constitutionality of state statutes requiring that obligors show their inability to comply with court ordered child support payments to avoid being held in civil contempt and incarcerated. *See Feiock*, 485 U.S. at 637–38. In other cases, the Supreme Court has not questioned the constitutional validity, as a general matter, of incarceration of a civil contemnor for failing to comply with a court order. *See, e.g., Rylander*, 460 U.S. at 761. In sum, Petitioner has not shown that "there was no reasonable basis for the state to deny relief" on this claim. *Richter*, 562 U.S. at 98.

## CONCLUSION

Petitioner has been released from custody and suffers no collateral consequences of the contempt judgment. In this case, however, he challenges contempt proceedings that may be cause injury capable of repetition, yet evading review. To avoid dismissal of his petition, Petitioner Ehlers is directed to reply within 21 days to Respondent's argument that the principles of *Younger v. Harris* require the court to abstain from considering this petition. For the reasons explained in above, Petitioner Ehlers is also directed to show cause within 21 days why his petition should not be denied on the merits. Both parties are invited, as well, to comment on whether rulings in the bankruptcy court alter the mootness analysis. Respondent's motion to dismiss [58] is entered and continued pending the parties' further submissions as directed here. Petitioner's motion for telephonic proceedings [50] is stricken without prejudice as moot.

ENTER:

Date:   January 3, 2020

_____
REBECCA R. PALLMEYER
United States District Judge